UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-CR-00299 (RBW) |
| | : | |
| MARIPOSA CASTRO/ | : | |
| Imelda Acosta | : | |
| | : | |
| Defendant. | : | |

**RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

A sentence of probation with a period of home confinement and/or other conditions is a reasonable sentence.  The prosecution asks for an unwarranted draconian sentence.  Ms. Acosta should not receive jail time for her presence at the Capitol, her filming, and her chants and words.  She went to the Capitol to bring peace.  "I brought with me the peace flag for peace," she explains in one of her videos as she left the Capitol.[1]  While there she got caught up in the moment, was influenced by others and had a lapse of judgement and said things that were uncharacteristic of her.  Importantly she never put into action anything she said.

In videos she recorded from that day she expressed what she perceived was going on around her, as well as how she felt after having suffered from pepper spray, teargas or whatever else was sprayed in the air.  She did not come to fight a war, nor to do any harm besides witness what was occurring and show it to others in case the media put a spin on what was occurring.  Prior to coming to the Capital she had heard that Antifa or other groups would be present and she thought that if

---

[1] Undersigned will play this section of the recording for the Court at sentencing.

that was the case they should be exposed but she never expected things to get as violent as they did at the hands of Trump supporters.

Any "fighting words" she may have said or chanted were more bark than bite. The government misconstrues Ms. Acosta's actual intent when they cite to words she said in the recordings. Ms. Acosta explains to the Court why she said some of those words and what they mean to her. See Attachment K. She acknowledges that some of what she said were words she heard others say and that she repeated those words, having gotten caught up in excitement of the crowd around her. She recognized her error in doing so.

She also explains to the Court in her letter that when she entered the window of Room ST-2M, she did so out of curiosity. She did not touch any of the furniture in the room but she saw others moving, destroying and taking things and so she exited. She watched and she filmed the whole time she was in that room, and that is all she did.[2] She was inside for about 2 minutes. Once outside the room she chanted with others outside. She did not attempt to go further into the Capitol, she could have helped people take furniture and pass it to others but she did none of that because she had no intent to destroy, help others out, or do anything negative in that way. Nor did she seek to re-enter the Capital again and very importantly she did not take part in anything to do with the tunnel which the government writes about in their pleading. In one of the videos Ms. Acosta recorded, a woman can be heard on a loudspeaker saying to others "they are asking for help, ....you

---

[2] Others who recorded inside that room showed her with her phone constantly pointing towards others to record what she saw, exposing their actions.

cannot leave the patriots alone… we need people, we the people need people."  Ms. Acosta's response was "I am getting out of here, this is too much!"[3]  At that point she recognized that this event was not one she wanted to be present for or be associated with.

The government wants the Court to sentence Ms. Acosta to jail time because she was outside the Capitol chanting with others, chants that others started.  She did not instigate anything, nor was she out there reeving up others, rather she was watching and then got caught up in what others were doing and saying.  It would be improper, unjust, and wholly unfounded to sentence her to jail time because of the violence perpetrated by others.  Yet that is what the government urges upon the Court.  The government's pleading describes at length what others were doing, and the havoc done by others.  The government tries to smear Ms. Acosta with the bad acts of others.  That is inappropriate and unfair.  The destruction and violence began before Ms. Acosta set foot on the grounds of the Capitol, whatever fervor or support the crowd cemented was already in motion prior to Ms. Acosta's arrival. Rather when she arrived she was swept up in what others already put into motion. She unfortunately got caught in the mood of the crowd that she encountered.

Even considering the government's "critical factors," a jail sentence is unwarranted.  Ms. Acosta herself did not do anything to destroy the Capitol or cause anything to be broken, nor did she have to force her way past police lines, or any barricades.  By the time she arrived, around 3:48 p.m. she just followed the

---

[3] At sentencing undersigned will play this portion of the video for the Court.

path of people.  She did not encourage property damage but merely filmed what she saw.  She stayed in the room merely 2 minutes and never sought to enter any portion of the building again.  When she recognized the situation was getting out of hand, she left.  She is remorseful for having been present and participated and for the destruction and violence that occurred at the Capitol. See Attachment A.

Further, to sentence Ms. Acosta to any jail time would cause an unwarranted disparity.  Undersigned represented another individual Ms. Abual-Ragheb, who plead guilty to the same offense.  Ms. Abual-Ragheb was sentenced to 60 days home confinement and 3 years probation.  (See government's chart of sentences imposed).  The government had asked for 30 days incarceration because of her social media comments.  She too, like Ms. Acosta, was in the Capitol for not more than 2 minutes, she also chanted outside with others, spoke about a Civil War, and posted fighting words.  The chart presented by the government, clearly illustrates that almost all, some 48 persons, who plead guilty to the same offense as Ms. Acosta received a non-incarceration sentence.  Hence to impose jail time would cause an unwarranted sentence.  Rather a sentence with a period of home confinement, followed by probation would be consistent with many of the other sentences imposed.  It is not Ms. Acosta who should be singled out and be ordered to pay and take the full blame of what others around her did.

The government cites to Jennifer Ryan's case, in support of their request for jail time.  Yet there is a vast difference between Ms. Ryan, a "self-described 'influencer,'" who "broadcasts over various platforms including social media,

Youtube, and radio, garnering thousands of followers and millions of viewers," and

the home maker, Ms. Acosta. See ECF No. 48, Case No. 1:21-cr-00050 (CRC),

government pleading citing to Ryans' PSR.  Ms. Acosta never received the tweet

that Ms. Ryan did prior to Ryan arriving at the Capitol.  That tweet notified her

that rioters breached barriers, caused destruction and overwhelmed police.  *Id*.  Nor

did she "broadcast hours before any mob formed at the Capitol" that "the day was a

'prelude' to 'war.'" *Id*.  According to the government Ms. Ryan also promoted

violence by saying "we're going to come after their studios next."        Ms. Acosta

did not claim she deserved a medal for what she did, nor state she felt like a martyr,

or describe on Fox News that her presence was "something noble," as Ms. Ryan did.

She did not seek to gain a profit from her presence during the attack either as the

government claims was the case of Ms. Ryan.  In fact, Ms. Acosta's presence at the

Capitol caused a tremendous financial lose for her and her family as well as a host

of other problems.  Unlike Ms. Ryan, Ms. Acosta did not provide a false statement to

Probation, or put out fake news in the media about the events of January 6.  And

finally, Ms. Acosta has no prior convictions while Ms. Ryan does.

The government also highlighted in their pleading the case of *United States*

*v. Dresch*, no. 1:21-cr-00071 (ABJ).  Yet Mr. Dresch was incarcerated during the

pendency of his case and he was sentenced to time served.  The Court could likewise

sentence Ms. Acosta to time served for the one day she was held after she was

arrested and until she made her first appearance in court in California.

Finally the government cites to co-defendants Derek Jancart and Erik Rau who were both sentenced to 45 days incarceration. Yet they entered guilty pleas to a different offense, disorderly conduct in the Capitol Building in violation of 40 U.S.C. 5104(e)(2)(D). Further their expectations arriving at the Capitol were far different than Ms. Acosta's. Mr. Jancart brought a gas mask and two way radios to Washington, D.C., See ECF No. 25, case 1:21-cr-00148-JEB. Mr. Rau brought a medical kit and Kevlar-lined gloves. *Id.* They went to the Capitol after they received a tweet that the Capitol had been breached. *Id.* They also went all the way into the Speaker's conference room in the Capitol, going past the Crypt, they also walked into Statuary hall and only left the Capitol after having been instructed by officers to leave, spending some 40 minutes inside of the Capitol. *Id.* Jancart falsely downplayed on social media the violence that occurred on January 6, possibly deleted evidence of videos and message threads from his phone, and exalted in seeing that others had surrounded the police. *Id.* Rau admitted that they used a bicycle rack that was propped on its side to scale a wall of the Capitol. *Id.* Comparing the actions of these defendants to those of Ms. Acosta highlight the differences and support a sentence of no jail time for Ms. Acosta.

Ms. Acosta is a peace loving, family oriented member of society. See Attachment L, photograph of five generations of woman in her family. In her letter to the Court she tries to provide the Court a better understanding of the gentle, compassionate person she is. See Attachment K. On January 6, she showed up to the Capitol waving her flag of peace. See Attachment M. The government can

point to no other person who came to the Capitol waving for peace.  When peace

could not be obtained she left.

Respectfully submitted,

OFFICE OF ELITA C. AMATO

/s/

_____

Elita C. Amato, Esq.
 2111 Wilson Blvd.,
8th Floor
Arlington, VA  22201
703-522-5900
Attorney to Imelda Acosta

**CERTIFICATE OF SERVICE**

I hereby certify that this RESPONSE was filed electronically through the
ECF filing system on this 21st day of February 2022, thereby, providing
service electronically upon government counsel, Jordan A. Konig, Esq.

_____/s/_____

Elita C. Amato
